UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JESSELYN A. RADACK,**<br><br>          **Plaintiff,**<br><br>          v.<br><br>**UNITED STATES DEPARTMENT OF JUSTICE,**<br><br>          **Defendant.** | Civil Action 04-01881 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jesselyn Radack ("Radack"), brings this action against her former employer, the United States Department of Justice ("DOJ"), alleging that DOJ's Office of Professional Responsibility ("OPR") violated the Privacy Act of 1974, 5 U.S.C. § 552a, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, by disclosing information about her to District of Columbia and Maryland Bar officials. Before the court is DOJ's motion to dismiss or, in the alternative, for summary judgment, as to Radack's Privacy Act claim [#4]. Upon consideration of DOJ's motion, the opposition thereto, and the record of this case, the court concludes that the motion must be granted in part and denied in part.

**I. FACTUAL BACKGROUND**

Radack worked at DOJ from October 1995 to April 2002, spending the last three years as a legal advisor in the Professional Responsibility Advisory Office ("PRAO"), an office that provides advice to DOJ attorneys regarding professional responsibility and choice of law issues.

On December 7, 2001, while working in her capacity as "duty attorney," Radack received an email from DOJ attorney John DePue, who worked in the Terrorism and Violent Crime Section of the Criminal Division, inquiring about the "ethical propriety of a proposed FBI interview" of John Walker Lindh, who was in custody in Afghanistan and whose family had recently retained an attorney to represent him.[1] After discussing the query with PRAO's senior legal advisor, Radack told DePue this "would be a pre-indictment, custodial overt interview, which is not authorized by law." Def.'s Mot. Ex. 6. On December 10, 2001, Radack learned that the FBI had nonetheless interviewed Lindh over the preceding two days. Radack immediately told her supervisor, Claudia Flynn, that PRAO's advice had been ignored. Flynn responded by saying that "PRAO's involvement in the matter was over." Compl. ¶¶ 14-15.

On January 15, 2002, the United States Attorney's Office filed criminal charges against Lindh in the United States District Court for the Eastern District of Virginia. In response to a discovery letter from Lindh's attorney, the prosecutor, Assistant United States Attorney Randy Bellows, sought all documents related to the PRAO emails. According to Radack, Bellows sent her an email on March 7, 2002, indicating that he had in his possession two of her emails to DePue, but he wanted to make sure to gather all "Lindh interrogation-related communications" that she had written. Compl. ¶ 16. When Radack informed Flynn of Bellows's email, Flynn told her, "I sent everything that was in the file." *Id*. ¶ 17. Radack then checked the hard copy file, but found that only three of the dozen or more emails she had written regarding Lindh's interrogation were there. A colleague of Radack's inspected the file and told her it "ha[d] been purged." *Id*. ¶

---

[1] John Walker Lindh is an American citizen who pled guilty to charges linking him to assisting the Taliban in Afghanistan and who was captured by United States armed forces. Compl. ¶ 11; http://notablecases.vaed.uscourts.gov/1:02-cr-00037/Index.html.

19. With help from a computer technician, Radack retrieved fourteen emails from the electronic archives on her computer. She then wrote a memo to Flynn, dated March 7, 2002, to which she attached copies of the fourteen emails that were missing from the hardcopy file. Though Flynn informed Radack that she would send the emails to Bellows, Radack maintains that she had a "good faith belief" that this never occurred. *Id.* ¶¶ 22, 23. Radack was mistaken, for in filings submitted to the Virginia District Court on March 1, 2002, and March 11, 2002, Bellows turned over thirty-three PRAO-related documents, including Radack's fourteen emails, *ex parte* and under seal, for in camera review. On April 1, 2002, the court granted the government's motion for a protective order prohibiting disclosure of the PRAO documents.

Due to what she characterizes as being "constructively fir[ed]," Radack resigned from PRAO on April 5, 2002, and began working at a law firm. In June 2002, Radack heard a broadcast on National Public Radio stating that DOJ claimed it "never" took the position that Lindh was entitled to counsel while in custody in Afghanistan. Compl. ¶ 27. The broadcast led Radack to believe that Flynn never disclosed her emails to Bellows or the court "because [she] did not believe the Department would have the temerity to make public statements contradicted by its own court filings." *Id*. Still unaware that the emails had been turned over and were subject to a protective order, Radack disclosed her emails to *Newsweek* magazine where they appeared in the online version of the magazine on June 15, 2002.

On June 19, 2002, the court instructed the government to file a written submission that addressed whether the emails were disclosed by an individual bound by the protective order. The Office of Inspector General ("OIG") subsequently initiated an investigation and concluded that Radack had disclosed the emails. Though DOJ ultimately did not seek an indictment against

3

her, Radack alleges that during the course of the investigation, an OIG agent informed her law firm that she was under criminal investigation and "enlisted their assistance in interrogating" her. Compl. ¶ 35. She alleges that her refusal to speak with the agent caused her to be fired from the law firm.

On October 11, 2002, DOJ filed a report with the court identifying Radack as the source of the disclosure. The court determined that Radack's disclosure "does not technically constitute a violation of any Order of this Court." Def.'s Mot. Ex. 2 at 3. On September 11, 2003, DOJ informed Radack's counsel that it had closed the criminal investigation of Radack. Subsequently, on October 31, 2003, OPR sent letters to the District of Columbia and Maryland bar authorities indicating that Radack "may have violated her duty not to knowingly reveal attorney-client privileged information" by disclosing the emails to *Newsweek*. *Id*. ¶ 40. The Attorney Grievance Commission of Maryland dismissed the referral against Radack on February 23, 2005, but the District of Columbia bar investigation is still pending, and Radack remains unemployed.

## II.  DISCUSSION

DOJ moves to dismiss Radack's claims on various grounds and, in the alternative, moves for summary judgment with respect to her Privacy Act claim. The court considers the asserted grounds for dismissal or judgment in turn.

A.  APA

DOJ asserts that Radack's APA claim must be dismissed[2] because she has failed to state a claim under Rule 12(b)(6).  DOJ's position cannot be sustained.

In order to survive a motion to dismiss for failure to state a claim, a plaintiff need only provide a statement "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Consequently, a 12(b)(6) motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 45-46.  In evaluating the motion, "the Court must construe the complaint in the light most favorable to plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).

The APA provides that a reviewing court may set aside final agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Radack asserts that OPR took final agency action when it released information about her to the bar authorities in Maryland and the District of Columbia and that this action was

---

[2] While DOJ's motion is captioned "Motion to Dismiss or, in the Alternative, for Summary Judgment," it does not request summary judgment with respect to Radack's APA claim.  DOJ's motion states that the APA claim "should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)," Def.'s Mot. at 39, and advises that "[t]he bar referral letters may be considered by the Court for purposes of a *motion to dismiss* because they are incorporated in the complaint and integral to plaintiff's claim." *Id.* at 38 n.26 (emphasis added).  The court therefore applies only a 12(b)(6) standard to the APA claim.  Because review under this standard is limited to information in the pleadings, the court declines to consider a declaration relied upon by DOJ to assert that the policies Radack claims that DOJ violated are inapplicable. *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997) (stating that when ruling upon a Rule 12(b)(6) motion, a court may not "draw upon facts from outside the pleadings").

arbitrary and capricious because OPR released the information in violation of its own internal policies, which require OPR to "conclude" and DOJ to "affirm" that an "attorney engaged in professional misconduct" before notifying state bar authorities. *Id.* ¶ 57. Radack's complaint is sufficient.

DOJ's argument that Radack's APA claim should be dismissed because OPR "acted in conformance with its applicable policy in referring plaintiff's conduct to bar counsel" misses the mark because it addresses the merits of Radack's APA claim, not the principles that govern whether a claim has been properly stated. Consequently, DOJ's motion to Dismiss Radack's APA claim on the ground that she fails to state a claim upon which relief may be granted is rejected..

DOJ's argument that Radack's APA claim must be dismissed because the Privacy Act provides the exclusive remedy for her alleged injuries is also without merit. The APA provides for judicial review of final agency actions "for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704; *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (holding that "[section] 704 'does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures'") (citing Attorney General's Manual on the Administrative Procedure Act 101 (1947)). DOJ argues that "the Privacy Act provides specific review procedures for plaintiff's claim against the Department for the release of information in the bar referral letters," and since "plaintiff's APA claim is based on the very same release of information that is covered by the Privacy Act, her APA claim must be dismissed pursuant to § 704." Def.'s Mot. at 36-37.

As Radack correctly points out, the Privacy Act provides only for monetary relief when an agency makes illegal disclosures. 5 U.S.C. 552a(g)(4); *see also Doe v. Chao*, 540 U.S. 614, 619 n.1 (2004) ("The Privacy Act says nothing about standards of proof governing equitable relief . . . , although it may be that this inattention is explained by the general provisions for equitable relief within the [APA]."). Because Radack seeks declaratory and injunctive relief in addition to damages, the Privacy Act does not provide an "adequate remedy." *See Transohio Savings Bank v. Office of Thrift Supervision*, 967 F.2d 598, 608 (D.C. Cir. 1992) (holding that since "the Claims Court cannot grant the equitable relief [plaintiff] seeks . . . the 'adequate remedy' limitation on the APA's waiver of sovereign immunity does not interfere with district court jurisdiction over [his] claims"). Furthermore, while Radack's Privacy Act claim is based on the premise that OPR improperly disclosed a record in a system of records without adequate notice, her APA claim centers on OPR's violation of its own internal policies. It therefore cannot be said that Radack's APA claim "duplicates existing procedures for review of an agency action." *Bowen*, 487 U.S. at 903. DOJ's motion to dismiss the APA claim is therefore denied.[3]

**B. Privacy Act**

The Privacy Act regulates the collection, maintenance, use, and dissemination of an individual's personal information by federal government agencies. *See generally* 5 U.S.C. § 552a. Each federal agency that maintains records in a system of records must adhere to the

---

[3] Because the court concludes that DOJ is entitled to summary judgment on Radack's Privacy Act claim, it need not address DOJ's arguments that The Privacy Act claim must be dismissed.

requirements set forth by the Act.[4]  *Id*. § 552a(e).  Agencies are generally prohibited from disclosing any information contained in their records without consent from the individual about whom the information pertains.  *Id.* § 552a(b).  There are twelve exceptions to this prohibition, one of which allows disclosure of a record if it is for a "routine use."  *Id*. § 552a(b)(3).  In order to ensure that people are aware of the purposes for which their information might be disclosed, agencies are required to publish each routine use in the Federal Register.  *Id.* § 552a(e)(4)(D); *Britt v. Naval Investigative Service*, 886 F.2d 544, 548 (3rd Cir. 1989).

DOJ contends that it is entitled to summary judgment[5] on Radack's Privacy Act claim because it disclosed her records pursuant to a published "routine use."  Section 552a(b)(3) of the

---

[4] An "agency" is defined as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . . , or any independent regulatory agency."  *Id.* §§ 552a(a)(1), 552(f)(1).  A "record" is "any item, collection, or grouping of information about an individual that is maintained by an agency," and a "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  *Id.* § 552a(a)(4)-(5).

[5] Under Federal Rule 56, a motion for summary judgment should be granted only if it is shown "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Material facts are those "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show the manner in which it believes the record "demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322 n.3.  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

Privacy Act provides that agencies may disclose information "for a routine use," which is defined as "the use of [a] record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7). The Act further states that agencies shall "publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which notice shall include . . . (D) each routine use of the records contained in the system, including the categories of users and the purpose of such use." *Id.* § 552a(e)(4)(D). The government must therefore demonstrate both "compatibility" and publication in the Federal Register in order to successfully invoke the routine use exception. *See Freeman v. U.S. Envtl. Prot. Agency*, 2004 U.S. Dist. LEXIS 21784, *18 (D.D.C. October 25, 2004); *Dep't of the Air Force v. Fed. Labor Relations Auth.,* 104 F.3d 1396, 1401-02 (D.C. Cir. 1997).

The records OPR disclosed that reference Radack were maintained in the OPR Record Index ("OPR Index").[6] In accordance with the Privacy Act, certain details of the OPR Index were published in the Federal Register, including, *inter alia*, the categories of individuals covered by the system, the categories of records in the system, the system's purpose, and the routine uses of records maintained in the system. 63 Fed. Reg. 68,299 (December 10, 1998). It is undisputed that this publication exists and that it lists all information required by the Privacy Act. DOJ has therefore satisfied the publication requirement.

DOJ asserts that it also has satisfied the compatibility requirement because OPR's purpose in collecting information on Radack's disclosure of the emails to *Newsweek* was

---

[6] DOJ also asserts that the records were maintained and properly disclosed pursuant to another system of records, the Correspondence Management System. Def.'s Mot. at 31. Because the summary judgment motion may be resolved with an examination of the OPR Index, the court need not engage in an analysis of this alternate system.

compatible with its use of that information when it referred her to bar authorities. The explicit purpose of the OPR Index is as follows: "[i]nformation in this system is maintained to provide for the resolution of allegations of misconduct made against Department of Justice employees and to advise complainants of the status of investigations and the results." *Id*. The OPR Index's tenth routine use provides that "information may be furnished to professional organizations or associations with which individuals covered by this system of records may be affiliated, such as state bar disciplinary authorities, to meet their responsibilities in connection with the administration and maintenance of standards of conduct and discipline." *Id.* at 68,300. Based on these guidelines, OPR was well within its proper bounds in disclosing Radack's information. One of the primary reasons OPR collected information on the OIG investigation of Radack was to determine whether she should be referred to the bar authorities for alleged unethical behavior. Def.'s Ex. 17, Decl. of Judith B. Wish ("Wish Decl.") ¶¶ 16, 17. There is therefore no doubt that the information was collected "to provide for the resolution of allegations of misconduct." 63 Fed. Reg. at 68,299. Equally clear is that in turning over the records to the state bar disciplinary authorities, the information was disclosed precisely in accordance with the purpose for which it was collected. Given this "concrete relationship or similarity . . . between the disclosing agency's purpose in gathering the information and in its disclosure," DOJ has easily met the compatibility requirement. *Britt*, 886 F.2d at 549-50.

      In her opposition to DOJ's motion for summary judgment, Radack concedes that the OPR Index was published in the Federal Register, and she does not contest that DOJ has satisfied the compatibility requirement. Her contention, rather, is that she is not an individual covered by the OPR Index and, therefore, publication and compatibility are irrelevant. The OPR index lists four

categories of individuals covered by the system, one of which is "DOJ employees who are the subjects of complaints directed to, or inquiries or investigations conducted by, OPR." 63 Fed. Reg. at 68,299. Radack asserts that she is not covered by this category because at the time OPR disclosed her records, she no longer worked at DOJ. She opines that because there is no provision covering *former* employees, DOJ had no authority to release her records. Radack's position cannot be sustained.

DOJ has interpreted "DOJ employees" to include people who were employees at the time of the alleged unethical conduct but resigned before an investigation was completed.[7] According to Judith Wish, Deputy Counsel of OPR, "OPR interprets 'DOJ employees' in the OPR System notice to include former Department employees, when the alleged misconduct is connected to or bears some relationship to that employee's tenure in the Department." Wish Decl. ¶ 24. In addition, the OPR Annual Report demonstrates that it is routine for OPR to disclose information regarding attorney misconduct after the individual has resigned. *See* United States Department of Justice, Office of Professional Responsibility, Fiscal Year 2001 Annual Report, *available at* http://www.usdoj.gov/opr/annualreport2001.htm#closed (citing to multiple occasions where "[t]he DOJ attorney who committed intentional misconduct left the Department before OPR completed its investigation. OPR referred its finding of professional misconduct to the appropriate state bar authorities.").[8]

---

[7]  The court must grant "great deference" to agency interpretations of routine uses. *Dep't of the Air Force v. Fed. Labor Relations Auth.*, 104 F.3d 1396, 1402 (D.C. Cir. 1997).

[8]  The statistics OPR maintains are available for each year from 1994 to 2003. To demonstrate that DOJ's asserted interpretation of "DOJ employees" was in place at the time of Radack's alleged unethical behavior, statistics from the 2001 Annual Report are most relevant.

While Radack contends that DOJ's assertions regarding its interpretation of "DOJ employee" rests solely on a declaration "which was prepared specifically for this litigation," Radack does not call into question the veracity of Wish's declaration or present any matter that might raise an issue of material fact.  Thus,  DOJ's motion for summary judgment with respect to Radack's Privacy Act claim must be granted.[9]

### III. CONCLUSION

For the aforementioned reasons, it is this 9th day of August, 2005, hereby

**ORDERED** that defendant's motion to dismiss plaintiff's APA claim is **DENIED**; and it is further

**ORDERED** that defendant's motion for summary judgment on plaintiff's Privacy Act claim is **GRANTED**; and it is further

**ORDERED** that the DOJ shall file a motion for summary judgment with respect to Radack's APA claim by no later than August 29, 2005; and it is further

**ORDERED** that Radack shall file her opposition to DOJ's motion and cross motion for summary judgment by no later than September 22, 2005; and it is further

---

[9] Radack asserts that DOJ's motion for summary judgment should be "at least deferred until after [she] has had an opportunity to take discovery that will allow her to test the assertions in Ms. Wish's Declaration." Pl.'s Opp'n at 23.  However, when a non-moving party seeks to obtain discovery prior to the court's ruling on a summary judgment motion, she must provide a "reasonable basis to suggest that discovery would reveal triable issues of fact." *Bancoult v. McNamara*, 217 F.R.D. 280, 283 (D.D.C. 2003) (citing *Carpenter v. Fed. Nat'l Mortgage Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999)); *see also Bastin v. Fed. Nat'l Mortgage Ass'n,* 104 F.3d 1392, 1396 (D.C. Cir. 1997) (holding that a district court does not abuse its discretion when it denies a discovery request supported only by speculation).  While it is clear that Radack disagrees with DOJ, she has not identified, or even speculated about the existence of, any alternate source of information that might refute DOJ's assertion.

**ORDERED** that DOJ shall file any reply and its opposition to Radack's cross motion for summary judgment by no later than October 12, 2005; and it is further

**ORDERED** that Radack shall file any reply to DOJ's opposition to her cross motion by no later than October 24, 2005.

Henry H. Kennedy, Jr.
United States District Judge
